IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| MYLO LUPOLI, | ) |
| | ) |
| Plaintiff, | ) Case No. 05-1612-KI |
| | ) |
| vs. | ) OPINION AND ORDER |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner, Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

Rory Linerud
P. O. Box 1105
Salem, Oregon 97308

    Attorney for Plaintiff

Karin J. Immergut
United States Attorney
District of Oregon
Neil J. Evans
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

Page 1 - OPINION AND ORDER

>Michael McGaughran
>Regional Chief Counsel, Region X, Seattle
>David M. Blume
>Special Assistant United States Attorney
>Social Security Administration
>701 5th Avenue, Suite 2900 M/S 901
>Seattle, Washington  98104-7075
>
>>Attorneys for Defendant

KING, Judge:

Plaintiff Mylo Lupoli brings this action pursuant to section 1383(c)(3) of the Social Security Act to obtain judicial review of a final decision of the Commissioner denying his application for supplemental security income benefits ("SSI").  I affirm the decision of the Commissioner.

## BACKGROUND

Lupoli filed applications for SSI on August 22, 2002.  The application was denied initially and upon reconsideration.  After a timely request for a hearing, Lupoli, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ").

On November 24, 2004, the ALJ issued a decision finding that Lupoli was not disabled within the meaning of the Act and therefore not entitled to benefits.  This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ.

## LEGAL STANDARDS

The Social Security Act (the "Act") provides for payment of disability insurance benefits ("DIB")  to people who have contributed to the Social Security program and who suffer from a

physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, SSI may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The burden of proof to establish a disability rests upon the claimant. Gomez v. Chater, 74 F.3d 967, 970 (9th Cir.), cert. denied, 519 U.S. 881 (1996) (DIB); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992) (SSI). To meet this burden, the claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. 20 C.F.R. §§ 404.1520 and 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1996) (DIB); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989) (SSI). First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the

claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past.  If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience.  The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities.  Distasio v. Shalala, 47 F.3d 348, 349 (9th Cir. 1995) (DIB); Drouin, 966 F.2d at 1257 (SSI).  The claimant is entitled to disability benefits only if he is not able to perform other work.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

When an individual seeks either DIB or SSI because of disability, judicial review of the Commissioner's decision is guided by the same standards.  42 U.S.C. §§ 405(g) and 1383(c)(3).  This court must review the case to see if the decision of the Commissioner is supported by

substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). It is more than a scintilla, but less than a preponderance, of the evidence. Id.

Even if the Commissioner's decision is supported by substantial evidence, it must be set aside if the proper legal standards were not applied in weighing the evidence and in making the decision. Id. The court must weigh both the evidence that supports and detracts from the Commissioner's decision. Id. The trier of fact, and not the reviewing court, must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the Commissioner. Id. at 720-21.

## FACTS

I.  Lupoli's History

Lupoli alleges disability based on bilateral shoulder pain, back pain, status post low back surgeries, inability to stand for extended periods, need to frequently lie down, pain and numbness in his arms and hands, inability to grip with both hands, strength loss in his upper extremities, depression, suicidal ideation, chronic migraine headaches, bilateral knee pain, weakness in both legs, bilateral hand cramping causing the inability to straighten his hands, and inability to sit for extended periods.

II. The ALJ's Decision

The ALJ found that plaintiff had physical impairments considered severe within the meaning of 20 C.F.R. § 404.1520(b), specifically cervical and lumbar degenerative disk disease.

Page 5 - OPINION AND ORDER

However, the ALJ did not find that these impairments met or medically equaled the requirements of any of the impairments listed in Appendix 1, Subpart P of the Social Security Regulations.

The ALJ determined that plaintiff could lift and carry up to 20 pounds occasionally and 10 pounds frequently, could sit, stand, and walk up to 6 hours each in an 8 hour workday, and occasionally bend, stoop and crouch.

Based on this residual functional capacity, and the testimony of the vocational expert ("VE"), the ALJ concluded that Lupoli could perform his past work as an automobile salesman and could perform other work as a quality control tester, packaging inspector, and property custodian. Accordingly, the ALJ found that plaintiff was not under a "disability" within the meaning of the Social Security Act, at any time through his date last insured.

## DISCUSSION

I.  Lupoli's Mental Impairment

Lupoli asserts that the ALJ should have determined that Lupoli's depression was severe. Even if the depression was not severe, the ALJ should have considered the depression as part of determining the residual functional capacity for plaintiff. In addition, Lupoli argues that the ALJ had a duty to develop the record as to his depression and suicide ideation, and should have ordered a psychiatric consultative examination.

The ALJ wrote, with regard to Lupoli's depression:

> The claimant also alleges depression with two suicide attempts since around 1995. The record shows that Michael Wilson, D.O., an orthopedic specialist, noted some signs of depression during a consultation on January 14, 1999. Furthermore, there is an emergency room record that indicates that he presented on a psychiatric referral from "family and children services" after making suicidal threats. Yet, Timothy Gray, D.O., one of his primary care providers, opined on June 16, 1998, that the claimant did not have any problems with understanding, memory, social

>interaction, adaptability or concentration, persistence and pace. With nothing more to corroborate the frequency and intensity of the claimant's alleged symptoms, the undersigned must conclude that these impairments do not significantly limit the claimant's physical or mental ability to do basic work activities and are therefore not severe.

Tr. 18.

> A. <u>Severity of the Mental Impairment</u>

It is plaintiff's burden to establish that he suffers from a "disability" under the Act, which is defined in part to be a "medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). An impairment or a combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1290 (9th Cir. 1996).

As the ALJ noted, treating physician Michael Wilson, D.O. diagnosed plaintiff with depression on January 14, 1999. In addition, treating surgeon, James Schmidt, M.D. diagnosed plaintiff with depression on November 10, 1999. However, the diagnoses of depression were made three years before the alleged onset date, and plaintiff did not provide any medical evidence of mental treatment or counseling during the relevant time period. Furthermore, Dr. Wilson's diagnosis of depression is contained in a four-page summary of his examination of Lupoli, and the summary contains no mention of statements made by plaintiff or other information supportive of the diagnosis of depression. Similarly, Dr. Schmidt's diagnosis appears to be based on his review of ER records of September 29, 1999, rather than on his own examination of Lupoli.

Page 7 - OPINION AND ORDER

In addition, while Lupoli and his wife testified about Lupoli's challenges with depression in 1995 and 1996, and his attempt to commit suicide in 1996, with regard to current depression, Lupoli stated,

> It's just, you know, I've been living this for so long, and I finally had to tell the doctor, you know, that, hey, if you don't give me surgery I'm going to shoot myself because I'm tired of the pain and then finally getting surgery and stuff. And then all of a sudden, it's–I'm going back into a regression, the pain cycle. . . . It's like when you can't support your family and everybody is still looking at you like you're, you know, you're perfectly healthy.

Tr. 498-99.

The difficulty with plaintiff's argument is that his testimony and his wife's testimony describe instances of depression from six years before his alleged onset date of July 2002. In addition, plaintiff's testimony about his current depression does not connote severity and he does not describe how his depression affects his ability to work. Based on the fact that neither the medical records nor plaintiff's own testimony describe an impairment that has more than a minimal effect on plaintiff's ability to work, substantial evidence supports the ALJ's conclusion that depression was non-severe.

Lupoli argues alternatively that even if the ALJ properly considered the depression to be non-severe, the ALJ should have considered the condition in forming the residual functional capacity for plaintiff. Lupoli has not identified any functional limitations the ALJ should have considered as a result of non-severe depression, nor is there any evidence in the record that the ALJ should have recognized. See Burch v. Barnhart, 400 F.3d 676, 684-84 (9th Cir. 2005). The ALJ's residual functional capacity assessment is supported by substantial evidence in the record.

B. Duty to Develop the Record

The ALJ's duty to fully and fairly develop the record exists even when the claimant is represented by counsel. Smolen, 80 F.3d at 1288. However, the ALJ's duty is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 262 F.3d 963, 968 (9th Cir. 2001), as amended 276 F.3d 453 (9th Cir. 2002), citing Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). An ALJ is required to obtain a consultative examination if the existing record is incomplete. 20 C.F.R. § 416.919a.

As noted above, neither of the diagnoses made by Dr. Wilson or Dr. Schmidt, nor plaintiff's own testimony would alert the ALJ that he should further investigate plaintiff's condition. In addition, the ALJ noted that plaintiff had reported to a Social Security Administration employee that he was no longer disabled, but had been disabled in the past. The ALJ also noted that Lupoli reported he worked on cars and hauled wood, and that his wife reported Lupoli worked outside, drove daily, shopped two or three times per month, went to restaurants and movies, and went camping and fishing on summer weekends. These are not the symptoms of a severely depressed person. Furthermore, plaintiff never sought medical treatment or counseling for his depression, even before his onset date. Since the evidence was not ambiguous, and the record was not incomplete, the ALJ did not err in failing to develop the record with regard to plaintiff's psychological issues.

II. Past Relevant Work

In step four, the question is whether the claimant is capable of performing his past relevant work. This can be determined through the testimony of a vocational expert ("VE").

Page 9 - OPINION AND ORDER

Hypothetical questions posed to a VE must specify all of the limitations and restrictions of the claimant. DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991). The ALJ determined that Lupoli could perform his past work as an automobile salesperson.

The Commissioner admits that the VE incorrectly described the automobile salesperson job as requiring an SVP of 4 when in fact it requires an SVP of 6. As a result, the Commissioner admits that the VE testimony is not substantial evidence that plaintiff could perform past work. Nevertheless, the Commissioner asserts that the ALJ properly relied on the VE's testimony that Lupoli could perform other work in the national economy.

III.    Other Work

The ALJ made an alternate finding, under step five, that Lupoli is capable of performing work which exists in significant numbers in the national economy. The Commissioner has the burden in step five, and can satisfy this burden if he asks the VE a hypothetical question that sets forth all the limitations of the claimant. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). The ALJ relied on the opinion provided by the VE at the hearing. Specifically, the ALJ determined that Lupoli could work as a quality control tester, property custodian, and packaging inspector.

Plaintiff points out that the VE provided incorrect DOT numbers for quality control tester and property custodian. The Commissioner admits that, as a result, this testimony is not substantial evidence that plaintiff could perform other work in the national economy.

Plaintiff also points out that the last position–packaging inspector–did not permit a sit or stand option, and that therefore the VE's testimony is not substantial evidence that Lupoli could perform other work in the national economy. The Commissioner responds that Lupoli does not

Page 10 - OPINION AND ORDER

require a sit-stand option, based on the examination of Julie Cheek, M.D. in November, 2002. In addition, the VE testified that someone could perform the packaging inspector job with a sit-stand option.

Plaintiff does not reply to the Commissioner's arguments. Regardless of whether the evidence supports plaintiff's need for a sit-stand option, the VE testified that all of the jobs would permit sitting for 30 minutes and standing for 30 minutes. Tr. 530-31. A single occupation satisfies the Commissioner's burden under step five of the analysis. See 20 CFR § 404.1566(b) ("Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications. Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered 'work which exists in the national economy.'") As a result, the ALJ's conclusion that Lupoli could perform other work in the national economy is supported by substantial evidence.

## CONCLUSION

The decision of the Commissioner is affirmed. Judgment will be entered.

IT IS SO ORDERED.

Dated this ___28th___ day of September, 2006.

                                                  ___/s/ Garr M. King___
                                                  Garr M. King
                                                  United States District Judge